UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

                                                    Criminal Case No. 22-20447
                                                    Honorable Linda V. Parker

WILLIAM LAWRENCE REED, JR.,

        Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS AND TO DISMISS INDICTMENT

Defendant Lawrence Reed, Jr. currently is charged in this case with one count of felon in possession of a firearm and one count of felon in possession of ammunition, both in violation of 18 U.S.C. § 922(g)(1).  Presently before the Court is Reed's motion to suppress evidence seized in the execution of two search warrants and to dismiss the Indictment on Second Amendment grounds, filed August 7, 2023.  (ECF No. 35.)  The motion is fully briefed.  (ECF Nos. 38, 39.)  The Court finds a hearing unnecessary to resolve the issues raised in Reed's motion.

## Background

In the sixteen months leading up to July 2022, there was increased firearm violence in Pontiac, Michigan, with over fifty shooting incidents.  (Weston Aff. ¶ 11, ECF No. 38-1 at PageID 170.)  The United States Bureau of Alcohol,

Tobacco, Firearms, and Explosives ("ATF") attributed the violence to fighting between two gangs: the "R Block" and "4 Block". (*Id.*) Reed has identified himself as a member of 4 Block. (*Id.*)

On June 17, 2022, law enforcement officers were surveilling an area in Pontiac where 4 Block members intended to gather for a street memorial. (*Id.* ¶ 12, PageID 170-71.) Officers observed Reed enter the driver's seat of a vehicle and leave the area. (*Id.* ¶ 13, PageID 171.) He was seen with an orange pill bottle in his hand. (*Id.*) Aware that Reed's driver's license was suspended, the officers effectuated a traffic stop of his vehicle. (*Id.*)

After Reed was detained, the officers located the orange pill bottle in the vehicle's center console.[1] (*Id.* ¶¶ 14, 15, PageID 171.) The label on the bottle was torn off and, inside, were fifty pills of suspected Acetaminophen and Oxycodone and a clear plastic baggie with approximately 5.55 grams of crack cocaine. (*Id.* ¶ 15, PageID 171.) Reed's cell phone was seized during his arrest. (*Id.*) When Reed was processed at the Oakland County Jail, deputies removed his jewelry, which included a silver bullet necklace. (*Id.* ¶ 16, PageID 172.) A white powdery substance was concealed inside the bullet. (*Id.*)

---

[1] This stop and subsequent search are not the subject of the pending motion.

On July 28, a search warrant was presented to United States Magistrate Judge David R. Grand for Reed's cell phone. (*See id.* at PageID 166.) The search warrant was in furtherance of the government's investigation of Reed for felon in possession of a firearm and possession with intent to distribute a controlled substance. (*Id.*) ATF Special Agent Kenton Weston's affidavit was submitted in support of the search warrant. (*Id.* at PageID 167-185.)

According to Agent Weston, Reed was convicted of possession of a controlled substance (cocaine, heroin, or another narcotic) less than 25 grams in 2018, and of felony unarmed robbery in 2020. (*Id.* ¶ 7, PageID 169.) He, therefore, was prohibited from possessing a firearm or ammunition.

Agent Weston reviewed postings from 2020 through 2022 on an Instagram account attributable to Reed, in which Reed was pictured posing with various suspected firearms, drugs, cash, and/or both. (*Id.* ¶¶ 18-21, PageID 172-73.) Agent Weston included screenshots of the postings in his affidavit. (*See id.* at PageID 174-76.) In one of those posts, dated March 29, 2022, Reed and another individual pose behind three large bags filled with suspected marijuana, an AR-15 style firearm, and bundles of cash. (*See id.* ¶ 25, PageID 176.) The caption of the picture reads: "I was on the bench now it's my time again." (*Id.*)

Based on his training, experience, and investigation, Agent Weston believed evidence related to guns and drugs would be found on Reed's phone. (*See id.* ¶¶ 2-

3

3, 5, PageID 167-68.)  Specifically, Agent Weston offered in his affidavit, individuals prohibited from possessing firearms often use Instagram messaging to communicate for the purpose of acquiring firearms and about their acquisition of firearms, believing that law enforcement officers are less likely to learn about their activities.  (*Id.* ¶ 32, PageID 178.)  Agent Weston further explained that individuals conspiring to commit crimes, including unlawfully possessing firearms, frequently use cell phones and other electronic communication devices to communicate with co-conspirators.  (*Id.* ¶ 34, PageID 179.)  Drug traffickers also regularly use cell phones for their trafficking activities.  (*Id.* ¶ 35, PageID 179.)  This includes communications with others to coordinate and complete sales, storing names and phone numbers, and maintaining logs of sales.  (*Id.*)

On July 28, Magistrate Judge Grand authorized the search warrant for Reed's cell phone.  In the search of the phone, Agent Weston discovered communications between Reed and other individuals about purchasing, selling, and acquiring firearms, Reed's possession of firearms, and images of Reed with an AR-15 style firearm.  Using that information and the information contained in his July 28 affidavit, Agent Weston obtained a search warrant for Reed's residence in Pontiac.

During the execution of the search warrant at the residence on August 23, the ATF seized a 31 round 9 mm magazine with 25 rounds of ammunition, along

with an empty 30 round magazine. Reed, who was home when the warrant was executed at the residence, subsequently admitted in a post-*Miranda* interview that he had recently possessed several firearms, including those depicted in the Instagram postings.

## Motion to Suppress

Reed argues that the search warrants for his cell phone and residence were not supported by probable cause. Specifically, he maintains that the search warrants relied, "almost exclusively," on images posted to his Instagram account. But, Reed argues, "[n]ot everything on the [I]nternet is exactly as it seems," and thus the firearms, drugs, and money in the photographs may not have been real. (ECF No. 35 at PageID 118.) Reed points out that well-known music artists make music videos in which they are holding purported firearms, drugs, and money, but those props are most likely fake. (*Id.*) It is not a crime, he further points out, to possess fake firearms.

The only other facts offered to support probable cause, Reed maintains, were his two prior felony convictions and the high rate of crime in Pontiac. Neither, he argues, supports probable cause.

## Applicable Law

As a general rule, the Fourth Amendment requires officers to obtain a warrant before conducting a search. *United States v. Smith*, 510 F.3d 641, 647 (6th

5

Cir. 2007).  The Supreme Court has stated clearly that a cell phone generally cannot be searched without a warrant simply because it was seized incident to an arrest.  *Riley v. California*, 573 U.S. 373, 401 (2014).  A warrant may issue upon the satisfaction of three requirements:

> (1) it must be issued by a "neutral, disinterested" magistrate or judge; (2) "those seeking the warrant must demonstrate to the magistrate or judge their probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense"; and (3) the warrant "must particularly describe the things to be seized, as well as the place to be searched."

*United States v. Smith*, -- F.4th --, 2022 WL 4115879, at *3 (6th Cir. 2022) (quoting *Dalia v. United States*, 441 U.S. 238, 255 (1979)) (brackets and additional quotation marks omitted).

As to the probable cause requirement—the only requirement challenged by Reed:  "A warrant will be upheld if the affidavit provides a 'substantial basis' for the issuing magistrate to believe 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  *Smith*, 510 F.3d at 652 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  In other words, "the circumstances must indicate why evidence of illegal activity will be found 'in a particular place.'  There must . . . be a 'nexus between the place to be searched and the evidence sought.'"  *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir.

6

2004) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)).

"The probable cause standard is a 'practical, non-technical conception' that deals with the 'factual and practical considerations of everyday life.'" *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (quoting *Gates*, 462 U.S. at 231). "The . . . inquiry requires a 'flexible, all-things-considered approach'— 'turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.'" *Smith*, 2022 WL 4115879, at *3 (quoting *Florida v. Harris*, 568 U.S. 237, 243 (2013)). "It is a . . . question based on 'common-sense conclusions about human behavior.'" *Id.* (quoting *Gates*, 462 U.S. at 230-31). "Probable cause 'is not a high bar.'" *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)).

An affidavit in support of a search warrant "must be judged 'holistically on what the affidavit does show, instead of focusing on what the affidavit does not contain, or the flaws of each individual component of the affidavit.'" *Smith*, 2022 WL 4115879, at *6 (quoting *United States v. Christian*, 925 F.3d 305 (6th Cir. 2019) (en banc)) (brackets omitted). A reviewing court should "not engage in 'hypertechnical, line-by-line scrutiny of the affidavit' because that practice has been 'explicitly forbidden by the Supreme Court.'" *Id.* (quoting *Christian*, 925

7

F.3d at 311) (cleaned up). "It is now long-settled that officers may 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" *Id.* (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)) (additional quotation marks omitted). "The issuing judge or magistrate may give considerable weight to the conclusion of experienced law enforcement officers regarding *where evidence of a crime is likely to be found* and is entitled to draw reasonable inferences about *where evidence is likely to be kept*." *Id.* (emphasis in original and quotation marks and citations omitted).

Further, when reviewing a search warrant issued by another judicial officer, a reviewing court must afford "great deference" to the probable cause determination that was made. *Smith*, 510 F.3d at 652 (citing *United States v. Leake*, 998 F.2d 1359, 1363 (6th Cir. 1993)); *see also United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc). As such, a magistrate judge's decision to grant a search warrant should be reversed "only . . . if it was arbitrarily exercised." *Smith*, 510 F.3d at 652 (quoting *Allen*, 211 F.3d at 973); *Finch*, 998 F.2d at 352.

Evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective generally should not be suppressed. *See United States v. Leon*, 468 U.S. 897, 905 (1984). In adopting this "good faith" exception,

8

the Supreme Court reasoned that "'in the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination' because 'it is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment.'" *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) (quoting *Leon*, 468 U.S. at 921). "It is a sound presumption that the magistrate is more qualified than the police officer to make a probable cause determination[.]" *Malley v. Briggs*, 475 U.S. 335, 346 n.9 (1986)

The relevant inquiry to decide whether *Leon*'s exception applies is an objective one, asking "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id*. (quoting *Leon*, 468 U.S. at 922-23 & n.23.) The exception is not applicable, however, where:

> 1) the supporting affidavit contained knowing or reckless falsity; 2) the issuing magistrate wholly abandoned his or her judicial role; 3) the affidavit is "so lacking in probable cause as to render official belief in its existence entirely unreasonable;" or 4) where the officer's reliance on the warrant was neither in good faith nor objectively reasonable

*Id.* (citing *Leon*, 468 U.S. at 923).

9

## Analysis

This Court concludes that the search warrants were supported by probable cause. However, even if they were not, the officers reasonably relied on the warrants' validity.

As the Sixth Circuit recently acknowledged in *Smith*, it "has assessed a cell phone warrant in only a few cases[.]" 2022 WL 4115879, at *7. In *United States v. Bass*, 785 F.3d 1043 (6th Cir. 2015), the court found probable cause to search a cell phone where officers indicated that the defendant and his co-conspirators frequently used their mobile devices to communicate in perpetrating their crime and the defendant was using the cell phone when it was seized incident to his arrest. *Id.* at 1049; *see also United States v. Sims*, 508 F. Appx 452, 460 (6th Cir. 2012) (finding probable cause when "the phone itself is being used in connection with an offense or commonly used by someone committing the offense," and the affidavit provided that the defendant used his phone in a one month period to make or take over 200 calls from co-conspirators). In contrast, the Sixth Circuit appears to have found probable cause lacking where the affidavit conveyed only that the cell phone was in the defendant's possession when he was arrested for a drug-related conspiracy and the affiant claimed that, based on his training and experience, conspiracies are often facilitated by cell phones. *United States v. Merriweather*, 728 F. App'x 498, 506 (6th Cir. 2018) (discussing *United States v.*

10

*Ramirez*, 180 F. Supp. 3d 491 495 (W.D. Ky. 2016)). The present case is not factually comparable to either of these cases but seems to fall closer to those finding probable cause.

If the only facts Agent Weston offered the magistrate judge were the high rate of crime in Pontiac, Reed's prior convictions, and the Instagram photographs, probable cause perhaps would have been lacking. Agent Weston's affidavit, however, also detailed the traffic stop of Reed, where the subject cell phone was seized. During the stop, controlled substances also were seized in a quantity indicative of drug trafficking. Agent Weston included in his affidavit that the label on the pill bottle had been removed, reasonably suggesting that it did not contain legally prescribed medication. The Sixth Circuit suggested in *Merriweather* that the discovery of a cell phone in a vehicle containing drugs suspected of being trafficked advances a finding of probable cause to search the phone. 728 F. App'x at 506.

Further suggesting that Reed was involved in drug trafficking were his Instagram posts, at least one of which included a photograph of Reed with suspected drugs, weapons, and money, and Reed's comment indicating that he was back again in the business of dealing drugs. In addition, according to Agent Weston's affidavit, Reed was affiliated with a gang believed to be responsible for the numerous shootings in Pontiac, which occurred during the period Reed was

11

posting photographs of himself with firearms. Given the totality of the circumstances, there was "a fair probability" that the guns in Reed's possession in the Instagram postings were real.

Agent Weston indicated that, based on his training and experience, individuals who post images and videos of themselves in possession of firearms frequently share their possession of firearms online and store and/or post the images and videos on social media platforms downloaded to their cell phones. Agent Weston further shared that, based on his training and experience, individuals prohibited from possessing firearms use social media messaging applications on their cell phones to communicate and coordinate with others to acquire firearms. This experienced law enforcement officer also shared his understanding of how drug traffickers use cellular phones to facilitate their drug trafficking activities. As the Sixth Circuit has advised, Magistrate Judge Grand, and this Court reviewing Magistrate Judge Grand's probable cause determination, "may give considerable weight to" Agent Weston's conclusions that evidence of crimes was likely to be kept and found on Reed's cell phone. *See supra*.

For these reasons, probable cause supported the issuance of the warrants. But even in the absence of probable cause, any evidence was seized in reasonable, good-faith reliance on the warrants. Reed does not argue that Weston's affidavit contained knowing or reckless falsity or that Magistrate Judge Grand "wholly

12

abandoned" his judicial role. Reed maintains only that "Weston's affidavit did not offer sufficient evidence to connect the criminal activity to Reed's cellular phone and . . . home." (ECF No. 39 at PageID 195.) However, this attack merely rehashes Reed's argument that the affidavit failed to establish probable cause—an argument already supposed true to make consideration of *Leon*'s exception necessary.

Reed recites the third circumstance where the good faith exception is inapplicable: when the officer's affidavit was "so lacking in indicia of probable cause that . . . no reasonable officer would rely on it." (*Id.* at PageID 194 (quoting *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017).) Yet, Reed does not explicitly assert that this was the case with Agent Weston's affidavit. In any event, the Supreme Court has stated that "[t]he threshold for establishing this exception is a high one[.]" *Messerschmidt*, 565 U.S. at 547. This Court does not find that threshold met, here.

For these reasons, the Court denies Reed's motion to suppress.

## Motion to Dismiss

Reed argues that the felon in possession statute, § 922(g)(1), is unconstitutional as it infringes on the right to bear arms under the Second Amendment. This is an argument raised recently by numerous defendants. An argument this Court has rejected. *See, e.g., United States v. Dobbs*, No. 22-20068,

13

2023 WL 4596756, at *3 (E.D. Mich. July 18, 2023); *United States v. Holmes*, No. 23-20075, 2023 WL 4494340, at *3 (E.D. Mich. July 12, 2023). Unless and until the Supreme Court or Sixth Circuit reach a different conclusion, or another Circuit reaches a different outcome applying reasoning that persuades this Court to change its mind, it continues to hold that § 922(g)(1) is constitutional. The Court adopts its prior reasons for reaching that conclusion here.

The Court, therefore, denies Reed's motion to dismiss.

## Conclusion

For the reasons stated, the Court holds that the evidence seized pursuant to search warrants for Reed's cellphone and residence should not be suppressed. The Court further holds that the charges against Reed should not be dismissed on constitutional grounds.

Accordingly,

**IT IS ORDERED** that Reed's motion to suppress and to dismiss (ECF No. 35) is **DENIED**.

                                                 s/ Linda V. Parker
                                                 LINDA V. PARKER
                                                 U.S. DISTRICT JUDGE

Dated: October 12, 2023